No. 40.—George W. Towns, Governor, &c. for the use of J. S. & L. Bonce, plaintiffs in error, *vs.* William Kellett *et al.* defendants in error.

[1.] The bare circumstance that the name of a person who did not execute the bond, is inserted in the body of it as one of the obligors, and a seal is left for his name, is not, *of itself*, evidence to show that those who did sign and seal and deliver it, delivered it only as an *escrow*, upon condition that that person should also execute it.

[2.] It is error in the Court to charge the law, upon an assumed state of facts, which have not been proven.

[3.] It is error in the Court to restrict the consideration of the Jury, in its charge, to a portion of the testimony only; and to instruct them that they must find for the plaintiff or the defendant, accordingly as they may find that to be.

[4.] Will a Justice of the Inferior Court, who has certified by his official attestation, that a Sheriff's bond has been sealed *and delivered,* be allowed to deny that the bond was, in fact, delivered?    *Quere.*

[5.] Although a Sheriff's bond be originally delivered as an escrow, yet, if subsequently, the sureties suffer him to act under this bond, will it not authorize the inference, that they had waived their demand of additional sureties and had consented to be bound by it as it stood?    And would not a contrary doctrine be to sanction a fraud upon the public?    *Quere.*

Debt, in Chattooga Superior Court.    Tried before Judge Jno. H. Lumpkin, October Term, 1851.

For the facts of this case, see the decision of the Court.

Alexander, for plaintiff in error.

Underwood, for defendant in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

This was an action of debt brought in Chattooga Superior Court, on a Sheriff's bond, at the instance of the Governor of the State, for the use of J. S. & L. Bonce, against William Kellett, as principal, and Martin Kellett, John W. Neely, Andrew Mosteller, John P. Evans and James F. Hitchcock, as securities.

William Kellett and James F. Hitchcock were not served. At the trial, the plaintiff tendered in evidence, the order of the Court, authorizing the bond to be delivered to him for the purpose of bringing the action. He then offered the bond itself, which was signed and sealed by all the defendants against whom the suit was brought, and purported to have been delivered in the presence of John F. Beavors and Terry F. Bolling, two of the Justices of the Inferior Court. The following entry was indorsed upon the bond: " Registered on the minutes of the Court, April Term, 1843.   ( L. L. HOPKINS, Clerk."

The name of Thomas S. Latimer was inserted in the body of the instrument, immediately after the names of William and Martin Kellett, and a blank seal was placed at the end of the signatures of the other securities.

[1.] Counsel for the defendant objected to the reading of the paper, on the ground that the name of Latimer appearing in the body of the bond and a scrawl having been placed at the bottom, to which there was no name, was evidence that the other securities were not to be bound unless Latimer subscribed also; and that he having failed or refused to do so, the obligation was imperfect and not binding on those who did sign; and the Court decided, that the instrument itself, afforded *prima facie* proof that it was inchoate; and that the securities who did sign were not to be liable, unless Latimer also signed; and that unless the plaintiff could rebut this presumption by evidence, the testimony must be excluded; whereupon, counsel for the plaintiff excepted.

In the judgment of the Court, the name of Latimer being inserted in the body of the writing and a seal-left for his name before the defendants executed it, is no evidence, *per se*, that the defendants did execute it *on condition* that he, Latimer, should also execute it. It is found in the possession of the obligee; it purports to have been sealed and delivered in the presence of two of the Justices of the Inferior Court, the agents appointed by the law to take the bond; and it was registered on the minutes of the Court. We must therefore say, that there was no evidence to justify the Court in excluding the paper. *Phil. on Ev.* 364.

*Grellier vs. Neale, Peake's Cases,* 145.  *Burrows vs. Lock,* 10 *Ves.* 474.

In *Blume vs. Burrows,* (2 *Iredell's L. Rep.* 338,) the name of James Martin, one of the securities, was inserted in the body of the bond, but was not prefixed to one of the seals left for that purpose; and the exception was taken there as here, and sustained by the Circuit Judge, that the instrument was not the act and deed of the parties who were sued, as it was inchoate and never delivered, which was manifested by Martin's having failed to sign the bond as an obligor; and the Jury having returned a verdict for the defendants, and a new trial being refused, the plaintiff appealed to the Supreme Court, which held, and we think very properly, that the proof tendered, amounted in law, to a presumption of an absolute sealing and delivery by the defendants, and that the burthen of proof was thrown on the defendants, to shew that the sealed writing had been delivered as an *escrow.*

In *Elliot & Perkins vs. Mayfield and Wife,* (4 *Ala. Rep.* 417,) the name of *John* Cummings was inserted in the body of the bond, but it was executed by *Thomas* Cummings; and the objection was, that the bond was void or inchoate on that account. The Court say, "it is true, that if the plaintiffs in error executed the instrument as an *escrow,* to be bound only on condition that it was executed by *John* Cummings, and *Thomas* Cummings had been afterwards substituted without their consent, it would not be their bond. But for aught this Court can know, the plaintiffs in error may have executed the bond, unconditionally, and not as an *escrow,* or may have subsequently assented to the substitution of *Thomas* for *John Cummings.*"

None of the cases cited on the brief of the defendant's counsel counteract the doctrine established by these cases. I have examined carefully and critically all the authorities which are supposed to be in conflict with it, in the adjudications which have been made upon this point. Not one of them overthrows this position.

The first is *Bean vs. Pailler & French,* 17 *Mass. Rep,* 591. This was a *scire facias,* to charge the sureties upon a bail bond.

Upon oyer of the bond, it appeared to have been executed only by Pailler and French, the sureties, and not by Aiken, the principal debtor, although in the body of it, it purported to have been executed by the three, and a seal was affixed, with a space opposite to it, for Aiken's signature.    The Court held, that the objection to the bond was fatal, for the reason *that it was essential to a bail bond that the party arrested should be the principal;* that the declaration recited that he had been arrested and had executed the bond, and that the instrument was incomplete without his signature. And the grounds of this opinion seem to be satisfactory—indeed, I might say unanswerable.

In the subsequent case of *Wood vs. Washburn,* (2 *Pick. Rep.* 24,) it was held, upon the authority of *Bean vs. Pailler and French,* that where an administration bond was not executed by the administrator, the sureties were not liable.

But the objection now under consideration, is not that William Kellett, the principal, did not execute the bond.  If so, these precedents would apply.

The next case which I find, is *Mary Tindal, administratrix of James Tindal, vs. Henry Bright,* (*Monroe's Rep.* 103.)    The defendants pleaded *non est factum,* specially accompanied with an affidavit of its truth, as required by the Statute of Alabama and by the Judiciary Act of this State, *although none such was filed on the trial in the Court below.*   The oath appended to the plea, alleged that the instrument on which the action was brought, was signed under the express condition and understanding between the obligee and the party, that it was to be considered valid, and as his act and deed, *only* in the event that George Buchanan should execute the same as a co-obligor or co-security ; otherwise, the same was to be considered as a nullity, and returned to the defendant to be destroyed, which event did not happen ; whereupon the writing is not his deed.   Upon demurrer, the plea was held to be sufficient ; and such, it unquestionably was, according to the opinion of this Court, in *Crawford vs. Foster,* 6 *Ga. Rep.* 202.

Again : in *King vs. Smith and others,* and *Porterfield vs. The Same,* (2 *Leigh's Rep.* 157,) P. agreed to join H. W. as his

surety, in a forthcoming bond; and executed and delivered the bond as an *escrow*, upon condition that K. should also join in and execute the bond as co-surety; and K. agreed to join as surety in the bond, and executed and delivered the same as an *escrow*, upon condition that O. W. also, should join in and execute the bond as co-security; but O. W. never united in the bond. It was held, that upon this state of facts, neither P. nor K. are liable for any part of the debt, *in Equity*, any more than they would be liable for any part of it *at Law*, where the facts would amount to proof of *non est factum*.

If, upon a special plea of *non est factum*, the Jury find the facts as here stated, we are clear that the Court of Appeals was right in maintaining that the bonds in question were not the deeds of the parties.

*Sharp vs. The United States*, (4 *Watts*, 21,) is a case which, from the head-note, as transferred from the original Report to the Digests, seems most to favor the judgment that is under review. It is laid down that a bond taken in pursuance of the Act of Congress, of the 19th day of April, 1816, signed by one surety, and which contained in the body of it the names of two, is not recoverable against the one who signed it, unless it be proved that he who signed it, dispensed with the execution of it by the other.

But by reference to the opinion of the Court, as delivered by Mr. Justice *Rogers*, it will be found, that the decision is placed expressly upon the peculiar provisions of the Law, which makes it the duty of the Collector of the Revenue to take a bond from the proprietors of stills, *with two or more sureties*. He says, "the bond, at the time Alexander Sharp affixed his signature to it, was filled up with the names of the principal and William Laughlin, and contained a reference to the Act of Congress, which requires, as before remarked, a bond with two or more sureties. At the time, therefore, that Alexander Sharp signed the bond, he had a right to believe that it was the intention of all the parties, that the bond was to be taken in strict conformity with the Act of Congress; and that William Laughlin would also execute the bond."

Towns, Governor,¹ &c. for the use of J. S. & L. Bowie, *vs.* Kellett *et al.*

Without intending to indorse the correctness of the conclusion at which the Court arrived, it is quite obvious that there is nothing in this Pennsylvania case, to justify the Judge below, in holding, that upon the face of the bond, and in the absence of any other proof, it was void as to the present defendants.

·John S. Beavers was then introduced and sworn as a witness by the plaintiff. He testified that he was one of the Inferior Court of Chattooga County; that his attestation to the bond was genuine; that the name of Thomas S. Latimer was inserted by him in the body of the bond, at the suggestion of William Kellett, the principal; that the bond was then delivered to Kellett, to procure the signatures of the persons he said would go his security; that there were not more than two of the securities present at any one time when they signed the bond; *that there was no understanding between him, as Judge, and the securities, that they were not to be bound unless Latimer signed—there was nothing said on the subject;* that he understood that Latimer was to sign, and would not have agreed to take the bond unless Latimer, or somebody else as good, had signed it; the security, he stated, was not very good at best; he did not know how the bond found its way into the Clerk's office; Kellett acted, for two years, as Sheriff of Chattooga County; Latimer did not authorize or direct his name to be inserted in the bond; witness never had any conversation with Latimer in reference to it.

The bond was then read to the Jury; and the *fi. fas.* which had been placed in the hands of the Sheriff in favor of the Bowies, the usees of the plaintiff, with the officer's receipt indorsed thereon for the money; also, the rules absolute, passed by the Court, requiring the Sheriff to pay over the amount due on the executions. ·

The testimony being closed, the Court charged the Jury as follows:

" In this case, there are but two points of law that it is necessary that I should refer to your consideration, before you retire to your room:  Are the securities to this bond released from liability to the obligee, if representations were made that other responsible individuals would sign it with them, who afterwards

failed or refused to do so? The Court is clear, that if such representations were made, and the securities were influenced by them to sign the bond, then it was an inducement to the contract; and if the other securities did not sign it, then those who did, are released from all liability.

" But again : was the bond executed and delivered? If you shall be of the opinion, from the testimony, that the bond was imperfect and inchoate, and left with the Sheriff, the principal obligor, for the purpose of obtaining the signature of Thomas S. Latimer, who never afterwards signed the bond, then it was never executed and could not be delivered until it was executed, and there is no liability incurred by the securities who did sign.

" It is improper that the Court should intimate, by any expression, what has or has not been proved on this point. It is your exclusive right to say what facts have been proved. The only witness who has testified, was introduced by the plaintiff in the action. He was one of the Judges of the Inferior Court, whose duty it was made by law, to take and approve the bond of the Sheriff of this County. Did the testimony satisfy you that the bond was executed and delivered? If so, you will say so by your verdict, and find for the plaintiff; but if his testimony should satisfy you that the bond was imperfect and inchoate and remains in that condition to this day, so far as the Court and the rest of the securities are concerned, then you will be compelled to find for the defendants.

" If there was an understanding that Thomas S. Latimer should sign the bond, between the Court and the securities; and the Court gave the bond to Kellett, to carry out that understanding, and he failed to obtain his signature, then the omission leaves the bond imperfect, and until that signature is obtained, after this agreement and understanding is had, there is no liability on the part of the securities—there is no executed contract between the parties."

[2.] This charge was excepted to ; and in the opinion of this Court, it is objectionable on several grounds. There was not a scintilla of evidence in the case, going to shew any understanding between the members of the Court who superintended

the execution of the bond, *and the securities*, that Latimer was to sign the bond. On the contrary, Beavers, the only witness sworn in reference to this point, states most positively that there was no such understanding. For any thing that appears to the contrary, they signed and sealed it, not upon condition that Latimer should do so likewise, but each for himself, as his own distinct and independent act and deed. Neither was there any *implied* understanding, as in the Pennsylvania case, inasmuch as our law does not prescribe, as did the Act of Congress, the number of securities which should sign the bond. There is no cause to complain, therefore, that the reasonable expectations of those who did sign, were disappointed, either wilfully or negligently. There was no intimation on the part of any one or more of them, that they were willing to bind themselves jointly with Thomas S. Latimer or any body else, and that they were unwilling, without this co-operation, to make themselves alone responsible.

According to the ruling of this Court, therefore, in *Butt vs. Maddox*, 7 *Ga. Rep.* 495 ; *Bethune vs. McCrary*, 8 *Ga. Rep.* 114 ; *and Montgomery vs. Evans, Ib.* 178, it was error to instruct the Jury upon an assumption of facts which did not exist.

[3.] The charge is justly obnoxious to the further complaint, that upon the question of *delivery*, it restricted the consideration of the Jury, exclusively to the testimony of Beavers ; whereas, independently of that, there was sufficient proof upon this point, to have justified them in finding a verdict for the plaintiff. The bond was registered on the minutes of the Court—taken from office designated by law for its custody, and purports upon its face to have been sealed and delivered in the presence of two of the Justices of the Inferior Court, the agents appointed by law to take it.

[4.] Whether Beavers and his colleague, after certifying officially that the bond was sealed and delivered in their presence, shall now be permitted to contradict the fact ?

[5.] And whether—although the bond was originally delivered as an *escrow*, yet if subsequently the securities suffered

their principal to act as Sheriff under it—it would not authorize the inference that they had waived their demand of additional sureties, if any such they were made, and consented to be bound by the bond as it stood? And whether it would not be a fraud upon the public, to allow them to lie by for two years, and suffer Kellett to act, without objection, upon a bond which they had signed, and the condition of which, therefore, it was their duty to examine into? These are all important questions which it may become necessary to weigh well, in the further progress of this cause.

The errors complained of in the requests and refusals to charge, as well as the instructions given, are all embraced in the assignments already discussed and adjudicated.

Let a new trial be awarded.